# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| PARAKKAMANNIL KOSHY BILJI VARGHESE, | CASE NO. 09cv2801 WQH (WVG) |
|---|---|
| Petitioner, | **ORDER** |
| vs. | |
| DOMINGO URIBE, JR., Warden, | |
| Respondent. | |

HAYES, Judge:

The matter before the Court is the Report and Recommendation ("R&R") (ECF No. 11) of Magistrate Judge William V. Gallo, filed on November 8, 2010, recommending that this Court dismiss the Petition for Writ of Habeas Corpus filed by Petitioner Parakkamannil Koshy Bilji Varghese. (ECF No. 1).

## BACKGROUND

Petitioner was convicted by a jury of one count of first degree murder in violation of California Penal Code §187(a). The jury also found that Petitioner used a dangerous deadly weapon, a knife, in the commission of the murder, in violation of California Penal Code §12022(b)(1).

During the investigation of the crime scene, officers found a small blood stain near a light switch in the victim's house. The DNA testing of the blood stain by the prosecution established that the blood belonged to Petitioner. In a pretrial motion, the defense asked for his expert to be allowed to independently test the blood stain without being required to reveal

the results of that testing to the prosecution although the testing may consume what remained of the blood stain. The prosecution opposed the motion and stated that it wished to conduct further testing on the stain but would be unable to do so if the blood stain were consumed.

At a hearing on the motion, the defense argued that there was no need for the prosecution to do additional testing. The defense argued that, based on Petitioner's constitutional right to counsel, the defense should be allowed to conduct an independent test of the remaining portion of the blood stain without an obligation to reveal the results. The prosecution argued that it wished to corroborate the DNA results obtained by its forensic scientist given the importance of the blood stain. The prosecution argued that additional testing would consume the remaining stain and a reasonable compromise would be to allow additional testing by either a neutral expert or the defense expert with the results being provided to both parties.

The trial court found there was a risk that additional testing would consume the blood stain and concluded that the prosecution was entitled to corroborate its findings on the important item of evidence. The trial court ruled that the defense could conduct additional tests on the blood stain, but required the result be provided to the prosecution.

The defense filed a motion seeking to have the trial court reconsider its ruling and submitted a declaration stating that after the ruling of the court, the prosecution had sent the blood stain to an independent laboratory for testing. The prosecution offered to have the testing done by the defense's expert on the condition that the results be provided to both parties, but the offer was declined. The trial court stated that it was willing to issue an order to allow the defense's expert or any independent laboratory agreeable to the defense to test the blood stain, but only if the results were made available to both parties. The defense declined the offer. The prosecution had a second DNA test performed on the remaining blood stain.

On April 10, 2006, Petitioner was convicted of one count of first degree murder and one count of use of a dangerous deadly weapon. Petitioner appealed his conviction to the California Court of Appeal. On May 8, 2008, the California Court of Appeal made the following ruling regarding the blood stain evidence:

> Here, the evidence was divided into two samples, each of which can be tested only once. One sample was used up by the [prosecution]. The question is whether the trial court erred in ordering that the remaining sample could be tested by an independent expert or an expert of [Petitioner's] choice but requiring [Petitioner] to reveal the bottom line result of the test, that is, whether the testing identified [him] or not. We conclude on the facts here the trial court acted within its discretion.
>
> No authority decides the precise question before us. However, as the examination of existing cases reflects, established factors guide the choices available to the trial court. Whatever choice it selects must ultimately support the orderly and accepted process of trial and support the integrity underlying the advocacy process. The opportunity for the prosecution to adequately meet a defendant's challenge to its expert and the expert's findings is an important component of the choice to be made. Indeed, that component appears to underly (sic) all of the [California cases cited in this opinion].
>
> In light of these observations, the function of the second sample becomes important because it must protect and serve the needs of both the prosecution and defense, and at the same time its use must not subvert the truth-finding role of the criminal justice process. This is a weighty task. Viewed in this light, the second test should permit the defense to scrutinize the evidence to assure the prosecution test is proper and correct. At the same time, it cannot be given over to the defense, destroyed through its testing procedures, thereby leaving it unusable as corroboration if at trial the defense challenges the prosecution's testing.
>
> Here, at the prosecutor's suggestion, the trial judge gave the defense the option of selecting a neutral expert or its own expert. It did not order the reports or observations of the expert be turned over to the prosecution. It ordered only the result of the test to be revealed. In doing so, the court granted the defendant the right to test the results and keep all of its work product and reports confidential. At the same time it foreclosed the possibility that a test result matching that of the prosecution's expert would be destroyed and [the prosecution] left without the ability to corroborate its findings if the defense were to challenge at trial the prosecution expert.
>
> We note the trial court and parties might have reached other compromises that meet the principles established by case law. We conclude only that the option selected here protected the interests of both parties and advanced the interest of determining the truth. It reflected an acceptable exercise of discretion.

Lodgment No. 1 at 13-14. On August 20, 2008, the California Supreme Court summarily denied the petition for review.

On December 10, 2009, Petitioner filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). Petitioner asserts that his rights were violated when the trial court "allowed Petitioner to have a defense expert test DNA evidence only on the condition that Petitioner turn over to the prosecution the results of that testing even if the defense expert did not testify at trial ...." *Id.* at 6. Petitioner also asserts that his "right to

counsel is meaningless [where] counsel is ... preclud[ed from] the giving of effective aid in the preparation and trial of the case." *Id*. On March 30, 2010, Respondents filed an Answer. (ECF No. 8). On April 26, 2010, Petitioner filed a Traverse. (ECF No. 10).

On November 8, 2010, the Magistrate Judge issued a Report and Recommendation recommending that the Petition be denied. (ECF No. 11). The Magistrate Judge stated: "there is no United States Supreme Court decision that addresses this issue. Therefore, since there is no clearly established United States Supreme Court decision on this issue, the Court of Appeal cannot be said to have unreasonably applied the law as to the issue presented in the Petition." *Id*. at 15. The Magistrate Judge also stated that no United States Supreme Court decision clearly extends to the issues presented in the Petition. The Magistrate Judge stated: "In light of the destructive testing of the blood sample proposed by Petitioner's counsel, the court was required to balance Petitioner's right to have the blood sample DNA-tested, and the prosecution's need to corroborate the results of the DNA test, if Petitioner challenged the prosecution's DNA expert's test result." *Id*. at 19. "Petitioner's counsel was afforded options regarding how to proceed with the destructive testing of the blood sample. Petitioner and his counsel rejected those options." *Id*.

On December 13, 2010, Petitioner filed objections to the Report and Recommendation. (ECF No. 13). Petitioner contends that his rights were violated by the trial court's requirement that the defense disclose the results of its test of the blood stain regardless of whether or not the defense intended to challenge the prosecution's DNA testing results. Petitioner contends that "[t]he prosecution ... does not have a right to corroborate its testing when its testing is not being challenged by the defense ...." *Id*. at 5. Petitioner contends that if the defense decided not to challenge the prosecution's DNA testing results, there was no need for the prosecution to corroborate the results. Petitioner contends that if the defense challenged the prosecution's DNA results through a defense expert, the results would be required to be produce prior to trial.

Petitioner also contends that "[t]he central problem is not the destruction of the remaining evidentiary sample during testing, but rather the circumstances under which the

defense was required to disclose the results of its own testing." *Id*. at 6. Petitioner contends that the trial court's ruling "interfered with the ability of counsel to make an independent decision about how to conduct the defense." *Id.* at 9. Petitioner contends that "the only way to [make an independent decision about how to conduct the defense] in an informed manner was to have a defense expert test the remaining sample." *Id*. at 7-8. Petitioner contends that he does not need to show that his counsel's performance was deficient because he was provided ineffective assistance of counsel due to the government's interference in his counsel's ability to make an independent decision.

In addition, Petitioner contends that the Report and Recommendation incorrectly refers to the forensic scientist Cornacchia as "Dr. Cornacchia," but there is no evidence in the record that Cornacchia held a doctoral degree. *Id*. at 2 n.1. Petitioner also contends that the Report and Recommendation contains "a significant factual flaw" because it states that the defense expert tested the blood stain for DNA, but the record shows that Dr. Blake did not actually test the blood stain and instead compared Petitioner's DNA to the results of the DNA tests performed by the prosecution. *Id*. at 9.

**STANDARD OF REVIEW**

The duties of the district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court must "make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

**DISCUSSION**

Petitioner objects to the Report and Recommendation in its entirety. Accordingly, the Court reviews the Petition and the Report and Recommendation *de novo*.

The Magistrate Judge correctly found that this Court's review of the Petition is governed by the deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996. (ECF No. 11 at 10). Under this standard, a petition cannot be granted unless the state

court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d); *see also Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

The relevant state court decision in this case is the written decision by the California Court of Appeals. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803-06 (1991). A state court cannot be said to have unreasonably applied the law when there is no clearly established federal law on that issue. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009).

After *de novo* review of the Petition, the record and the submissions of the parties, the Court finds that the California Court of Appeal correctly reasoned that "[n]o authority decides the precise question before [the court]." Lodgment No. 1 at 13. The Magistrate Judge correctly found that "at the time Petitioner's claim was decided in the state courts, there was no United States Supreme Court decision that specifically addressed whether due process and the right to counsel are violated when a court orders that a criminal defendant be granted access to test a sample of prosecution evidence that will destroy the evidence and then require[s] the result of the test to be disclosed to the prosecution." (ECF No. 11 at 14-15).

The Magistrate Judge correctly found that "no United States Supreme Court decision clearly extends to the context presented in this case." *Id*. at 15. In *Ake*, the Court held that due process required that a defendant be provided access to a psychiatrist's assistance regarding whether the defendant was sane at the time of the offense. *Ake*, 470 U.S. at 76. The Court stated, "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Id*. at 77. In this case, the defense was given the choice of using a defense expert to test the remaining portion of the blood stain and providing the results to the prosecution or using an independent laboratory to perform the test which would provide each party with the results. The Magistrate Judge correctly concluded that *Ake v. Oklahoma*, 470 U.S. 68 (1985)

1 does not clearly extend to this case because "Petitioner was not deprived of the use of a DNA
2 expert at trial." (ECF No. 11 at 17).

3       For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must
4 demonstrate two things. First, he must show that counsel's performance was deficient.
5 *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires showing that counsel
6 made errors so serious that counsel was not functioning as the 'counsel' guaranteed the
7 defendant by the Sixth Amendment." *Id*. Second, he must show counsel's deficient
8 performance prejudiced the defense. *Id*. This requires showing that counsel's errors were so
9 serious they deprived Petitioner "of a fair trial, a trial whose result is reliable." *Id*. However,
10 when ineffective assistance of counsel is based on direct governmental interference with the
11 right to counsel, petitioner is not required to show prejudice. *Perry v. Leeke*, 488 U.S. 272,
12 280 (1989) ("'Actual or constructive denial of the assistance of counsel altogether,' is not
13 subject to the kind of prejudice analysis that is appropriate in determining whether the quality
14 of a lawyer's performance itself has been constitutionally ineffective.") (citation omitted).

15       In this case, the trial court balanced the prosecution's interest in corroborating its DNA
16 test results with the defense counsel's request to test the remaining portion of the blood stain.
17 The trial court concluded that the defense could choose to use its own expert to test the
18 remaining portion of the blood stain and provide the results to the prosecution or use an
19 independent laboratory to perform the test which would provide each party with the results.
20 The California Court of Appeal concluded that the trial court's decision "protected the interests
21 of both parties and advanced the interest of determining the truth." Lodgment No. 1 at 14. The
22 Magistrate Judge correctly concluded that *Powell v. Alabama*, 287 U.S. 45 (1932), and
23 *Strickland v. Washington*, 466 U.S. 668 (1984) do not clearly extend to this case because "the
24 trial court in this case did not interfere in Petitioner's counsel's decisions about how to conduct
25 a defense." (ECF No. 11 at 19).

26       Petitioner's objections are overruled except for the following: (1) Petitioner's objection
27 to the use of the prefix "Dr." before forensic scientist Cornacchia's name; (2) Petitioner's
28 objection to the factual statement that Petitioner's expert was provided a swab of the blood

1  stain; and (3) Petitioner's objection to the statement that Petitioner failed to identify an error
2  committed by counsel or how the error rendered an unreliable result at trial. (ECF No. 13 at
3  2 n.1, 8-9). The Court does not adopt the following portions of the Report and
4  Recommendation: (1) the prefix "Dr." located at page 7 lines 27-28, page 8 lines 5 and 10,
5  page 9 line 22, and page 10 line 2; (2) the factual statement that Petitioner's expert was
6  provided a swab of the blood stain located at page 9 line 27 through page 10 line 3, page 17
7  lines 9-11, and page 19 lines 15-18; and (3) the statement that Petitioner failed to identify an
8  error committed by counsel or how the error rendered an unreliable result at trial located at
9  page 19 lines 18-20. (ECF No. 11 at 7-10, 17, 19). The Petition is denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability must be obtained by a petitioner in order to pursue an appeal from a final order in a Section 2254 habeas corpus proceeding. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). It must appear that reasonable jurists could find the district court's assessment of the petitioner's constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The Court of Appeals for the Ninth Circuit has stated:

> [T]he issuance of a COA is not precluded where the petitioner cannot meet the standard to obtain a writ of habeas corpus. . . . This general principle reflects the fact that the COA requirement constitutes a gatekeeping mechanism that prevents [an appellate court] from devoting judicial resources on frivolous issues while at the same time affording habeas petitioners an opportunity to persuade [the appellate court] . . . of the potential merit of issues that may appear, at first glance, to lack merit.

*Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (citing, *inter alia*, *Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000) (a COA should issue unless the claims are "utterly without merit")). Although the Court denied Petitioner's habeas Petition, the Court finds that Petitioner raised nonfrivolous constitutional arguments. The Court concludes that jurists of

reason could find it debatable whether this Court was correct in denying the Petition. The Court grants a certificate of appealability.

## CONCLUSION

IT IS HEREBY ORDERED that the Court ADOPTS the Report and Recommendation (ECF No. 11) except for the following:

(1) the prefix "Dr." located at page 7 lines 27-28, page 8 lines 5 and 10, page 9 line 22, and page 10 line 2;

(2) the statement that Petitioner's expert was provided a swab of the blood stain located at page 9 line 27 through page 10 line 3, page 17 lines 9-11, and page 19 lines 15-18; and

(3) the statement that Petitioner failed to identify an error committed by counsel or how the error rendered an unreliable result at trial located at page 19 lines 18-20.

The Petition for Writ of Habeas Corpus is DENIED. (ECF No. 1). A certificate of appealability is GRANTED. The Clerk of the Court shall close this case.

DATED: March 30, 2011

**WILLIAM Q. HAYES**
United States District Judge